UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MARCELLA ROSE, an individual, | ) | Case No.: 11cv00240 AJB (KSC) |
| Plaintiff, | ) ) | |
| v. | ) ) | ORDER DENYING PLAINTIFF'S |
| | ) | MOTION TO REMAND AND |
| SEAMLESS FINANCIAL CORPORATION | ) | GRANTING  DEFENDANT'S MOTION |
| INC., a Nevada Corporation; MICHAEL | ) | TO DISMISS PLAINTIFF'S SECOND |
| MCDEVITT, an individual; CHAD | ) | AMENDED COMPLAINT |
| HAGOBIAN, an individual; JEAN-PIERRE | ) | |
| RADTKE, an individual; PREMIERE | ) | (Doc. No. 59 and 61) |
| CAPITAL ESCROW, INC., a California | ) | |
| corporation; LUIS ANTONIO VENEGAS, an | ) | |
| individual; and DOES 1-100, | ) | |
| | ) | |
| Defendants. | ) | |

Presently before the Court are Defendant Chad Hagobian's ("Defendant" or "Hagobian") Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC") [Doc. No. 53], and Plaintiff Marcella Rose's ("Plaintiff") Motion to Remand, [Doc. No. 61].  In accordance with Civil Local Rule 7.1.d.1, the Court finds both motions suitable for determination on the papers and without oral argument.  Accordingly, the motion hearing scheduled for September 14, 2012 is hereby vacated.  For the reasons set forth below, the Court **DENIES** Plaintiff's Motion to Remand and **GRANTS** Defendant's Motion to Dismiss

1  without leave to amend, with the exception of Plaintiff's fourth cause of action, in which the Court

2  **GRANTS** Defendant's motion to dismiss with leave to amend.

3                                              **I.**

4                                       **BACKGROUND**

5  *A.      Factual Background*

6          Plaintiff is a ninety-year-old woman residing in San Diego, California.  On or around April 2008,

7  Plaintiff executed a loan in the amount of $510,000 (the "Loan") secured by a first deed of trust on the

8  property located at 3665 Trenton Avenue, San Diego, California 92117 (the "Property").[1]  The purpose

9  of the Loan was to obtain funds for personal, family, and household purposes, and to pay off a then-

10 existing mortgage held by Countywide Bank, FSB and Countrywide Home Loans, Inc.  [Doc. No. 1.]

11         Plaintiff currently alleges that Premiere Capital Escrow, Inc. ("Premiere") requested through Ms.

12 Evelyn Ortega ("Ortega") a preliminary title report on the Property on or about April 8, 2009.  Plaintiff

13 then received a telephone call from Michael McDevitt ("McDevitt"), an individual employed by

14 Seamless Financial Corporation, Inc. ("Seamless"), regarding the possibility to refinance a loan on her

15 current mortgage.  [SAC, Doc. No. 53 ¶ 19.]  During initial conversations between McDevitt and

16 Plaintiff, Plaintiff disclosed that she had a savings account containing approximately $85,000.  [*Id*. ¶

17 20.]  Plaintiff also provided McDevitt with proof of income showing she received monthly social

18 security benefits in the amount of $1,077, and pension payments in the amount of $338.83.  [*Id*.]

19 McDevitt then informed Plaintiff that if she could contribute $27,000 from her saving account up front,

20 he could provide her with a loan with a 3.75% interest rate, fixed for fifteen years.  [*Id*. ¶ 20.]  Plaintiff

21 further alleges that Seamless, through Ms. Grosser ("Grosser'), Mr. Radtke ("Radtke"), and/or

22 McDevitt, caused Plaintiff's loan application to state that her monthly income was $9,600 ($7,800 from

23 her pension and retirement and $1,800 a month in pension benefits) and forged her signature on the

24 typewritten loan application documents to falsely state her monthly income to ensure she would qualify

25 for the Loan.  [SAC Doc. No. 53 ¶ 23.]

26

27

28
_____
          [1]The loan was originally obtained from Wachovia Mortgage, FSB ("Wachovia") and later
transferred to Wells Fargo Bank, NA ("Wells Fargo" ) as a result of a merger.

After the Loan documents were finalized, Plaintiff made payments on the Loan for over a year. Plaintiff then became aware that her Loan was in fact a "Pick-A-Payment"[2] mortgage loan rather than a loan with a fixed interest rate of 3.75%. [*Id.* ¶ 26.] Soon thereafter, the Loan payments became unaffordable and Plaintiff defaulted on the Loan. [*Id.* ¶ 26-29.] After several unsuccessful attempts to modify the terms of Plaintiff's Loan, foreclosure proceeding commenced against the Property on August 11, 2009. The Property was then sold in a short sale to avoid foreclosure.[3]

At all times relevant herein, Defendant Hagobian was an agent and the designated broker of record for Seamless.[4] [SAC, Doc. No. 53 ¶ 8.] As the designated broker, Plaintiff alleges that Hagobian had a responsibility to supervise loan officers employed by Seamless, including, but not limited to, Grosser, Radtke, and McDevitt, and that Hagobian delegated this duty in the instant transaction to Radtke and/or others employed by Seamless. [*Id.* ¶ 8.]

**B.    *Procedural Background***

The present action was originally filed on December 29, 2010 in state court against Defendants Wachovia, Wells Fargo,[5] Seamless, McDevitt, and Hagobian. [Doc. No. 1]. The complaint contained six causes of action alleging: (1) violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 ("RESPA"); (2) violation of the Federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"); (3) violation of the California Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788 *et seq*. ("Rosenthal Act"); (4) Unfair Competition under California Business and Professions Code §§ 17200 *et seq*. ("UCL"); (5) fraud and deceit; and (6) violation of the Elder Abuse and Dependent Adult Civil Protection Act, Cal. Welfare & Institutions Code § 15610.30 (the "Elder Abuse

---

[2] Plaintiff alleges that the "Pick-A-Payment" mortgage loan was an Option Adjustable rate Mortgage ("ARM") home loan, which had a variable rate feature, payment caps, and charged a much greater interest rate than Plaintiff was originally promised by McDevitt. [SAC Doc. No. 53 ¶ 26.]

[3] Defendant Wells Fargo stated that the Property was sold for $575,000 at a point when the Plaintiff owed approximately $577,177.64 on the Loan. [ Well's Fargo's MTD Doc. No. 4-1 at 1: 22-23.] Plaintiff alleges that the Property was sold for $65,000 more than the amount of her Loan. [SAC Doc. No. 53 ¶ 32.]

[4] California's real estate regulations requires that every corporate licensee employs a "designated broker." Defendant is a licensed real estate broker operating under license no. 01745380.

[5] Wells Fargo brought the motion individually and on behalf of Wachovia as their predecessor in interest. All further references will be solely to Wells Fargo.

1   Act").  The first, second, and third causes of action were alleged solely against Wachovia and Wells

2   Fargo, whereas the remaining state law causes of action were alleged against all Defendants.

3   On February 4, 2011, the Defendants removed this action to federal court on the basis of federal

4   question jurisdiction and supplemental jurisdiction over the related state law claims.  [Doc. No. 1.]  On

5   February 11, 2011, Defendant Wells Fargo filed a motion to dismiss the complaint, [Doc. No. 2], which

6   was subsequently denied as moot after Plaintiff filed a First Amended Compliant ("FAC") on March 4,

7   2011.  [Doc. No. 7.][6]  Thereafter, on March 18, 2011, Wells Fargo moved to dismiss Plaintiff's FAC.

8   [Doc. No. 13.]  On May 25, 2011, Plaintiff and Hagobian filed a joint motion for an extension of time

9   for Hagobian to respond to the FAC.  [Doc. No. 23.]  While Wells Fargo's motion to dismiss was

10  pending, Wells Fargo and Plaintiff entered into a good faith settlement.  [Doc. No. 32.]  Such settlement

11  was approved by the Court on March 2, 2012, [Doc. No. 50], and Wells Fargo and the federal causes of

12  action alleged against Wells Fargo were thereby dismissed, [Doc. No. 56].

13  Plaintiff filed a SAC on April 2, 2012.  [Doc. No. 53.]  The SAC alleged four causes of action,

14  including: (1) violation of the Elder Abuse Act; (2) fraud and deceit; (3) breach of fiduciary duty; and

15  (4) unlawful, unfair, and deceptive practices under the UCL.[7]  On May 1, 2012, Defendant Hagobian

16  filed the instant Motion to Dismiss, [Doc. No. 59], and on June 1, 2012 Plaintiff filed the instant motion

17  to remand, [Doc. No. 61].

**II.**

**DISCUSSION**

18

19  *A.*   *Motion to Remand*

20  Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a state court of which the district

21  courts of the United States have original jurisdiction may be removed by the defendant or the defendants

22  to the district court of the United States for the district and division embracing the place where such

23  action is pending."  Under 28 U.S.C. §§ 1331 and 1332, a district court has original jurisdiction over

24  civil actions that arise under federal law or are between citizens of different states and the amount in

25

26  [6] On March 16, 2011 this case was transferred from Judge Irma E. Gonzalez.  [Doc. No. 12.]

27  [7]  The SAC named Seamless, McDevitt, Hagobian, Jean-Pierre Radtke ("Radtke"), Premiere
    Capital Escrow, Inc. ("Premiere"), and Luis Antonio Venegas ("Venegas") as defendants. Defendants
28  Radtke, Premiere, and Venegas were added as additional defendants by Plaintiff for the first time in the
    SAC.

11cv00240

controversy, exclusive of costs and interest, exceeds $75,000.  An action "arises under" federal law if the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. *Grable & Sons Metal Prods. Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).  In determining whether federal jurisdiction attaches to a state law claim that is predicated on violation of federal law, a court must examine whether the "state-law claim necessarily raises a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressional approved balance of federal and state judicial responsibilities." *Id.*  Therefore, "when a claim can be supported by alternative and independent theories – one of which is a state law theory and one of which is a federal law theory – federal question jurisdiction is not a necessary element of the claim." *Id.* (quoting *Rains v. Criterion Sys. Inc.*, 80 F.3d 339, 346 (9th Cir. 1996)).  Specifically, in the context of a UCL claim, courts have consistently found that federal question jurisdiction does not exist where a plaintiff has alleged a UCL claim based on violations of both federal and state law, as the cause of action does not "necessarily" depend on a resolution of federal law.  *See Franchise Tax Bd. Of State of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 28 (1983).

The propriety of the removal may be tested in federal court by a motion to remand.  *See* 28 U.S.C. § 1447(c).  Remand of a case to state court after removal is appropriate when removal is procedurally improper, or when there are no grounds for federal jurisdiction, whether federal question or diversity.  *Id*; *Baker v. BDO Seidman*, L.L.P., 390 F. Supp. 2d 919, 920 (N.D. Cal. 2005) (noting that federal jurisdiction is "traditionally predicated upon diversity jurisdiction or federal question jurisdic- tion").  The removal statute is strictly construed against removal jurisdiction, and the court must reject federal jurisdiction if there is any doubt as to whether removal was proper.  *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).  The party seeking removal bears the burden of proving the propriety of removal. *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996).

However, it is well settled that a federal court has the power to hear claims that would not be independently removable even after the basis for removal jurisdiction has been dismissed from the proceedings.  *See Harrell v. 20th Century Ins. Co.*, 934 F.2d 203, 205 (9th Cir. 1991); *Carlsbad Tech., Inc. v. HIF BIO, Inc.*, 556 U.S. 635 (2009).  Thus, while it is generally preferable for a district court to remand remaining pendent claims to state court, the decision of the district court to remand "remains

1  discretionary and is dependent upon what will best accommodate the values of economy, convenience,

2  fairness, and comity." *Id; Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

3       Plaintiff's motion to remand is based on the assertion that: (1) the court lacks subject matter

4  jurisdiction over the remaining state law claims; and (2) no prejudice or injustice would result in

5  remanding the case to state court as no discovery has yet been conducted. On the other hand, Defendant

6  argues that because Plaintiff's fourth cause of action alleging violation of the UCL is based on an

7  alleged "unlawful" violation of the Truth in Lending Act ("TILA"), a federal law, "the success or failure

8  of Plaintiff's UCL claim is contingent upon violations of federal law." *Cordon v. Wachovia Mortg.*, 776

9  F.Supp. 2d 1036 (N.D. Cal. 2011). Additionally, Defendant asserts that even in the absence of federal

10  question jurisdiction, justice requires the Court to deny Plaintiff's motion to remand. [Doc. No. 65.]

11       Although all of the cases cited by Defendant, which held that the court retained federal question

12  jurisdiction where a state law UCL claim alleged violations of federal law, are instructive, the instant

13  case can be distinguished. Specifically, whereas the cited cases referred to UCL claims that *depended*

14  *on* a possible violation of federal law, and only federal law, here, Plaintiff's UCL claim alleging

15  "unlawful" conduct is premised on violations of either the Elder Abuse Act, California Business and

16  Professions Code § 10159.2, *or* the Truth in Lending Act. Therefore, Plaintiff's cause of action under

17  the UCL can be predicated on a finding that Defendant violated the Elder Abuse Act or Section 10159.2

18  (both state law claims), rather than a finding that Defendant violated the federal Truth in Lending Act.

19  Accordingly, the success of Plaintiff's UCL claim is not contingent on a violation of federal law.

20       However, even though the Court no longer retains federal question jurisdiction over the case,

21  remand is not automatic and is within the sound discretion of the Court. Plaintiff argues that remand

22  should be granted because no discovery has been conducted in the case, and notwithstanding the filing

23  date,[8] the case is relatively undeveloped. Conversely, Defendant argues that the Court should retain

24  jurisdiction because this case has been before the Court for over a year and a half, significant judicial

25  resources have been expended, and many procedural and substantive issues have been decided. On

26  balance, the Court finds that retaining jurisdiction over the case would best promote the policies of

27

28       [8] The instant case was filed December 29, 2010 in state court and transferred to federal court on
February 4, 2011.

11cv00240

1   judicial economy, fairness to the parties, and convenience.  Plaintiff has amended her complaint twice

2   before this Court, this Court has approved a good faith settlement between Plaintiff and Wells Fargo,

3   and the Court is well versed in both the procedural and factual history of the case.  Moreover, Plaintiff's

4   SAC was filed after Wells Fargo and the corresponding federal claims had been dismissed, and

5   Plaintiff's motion to remand was not filed until Plaintiff responded to Defendant's motion to dismiss.

6   Accordingly, the Court DENIES Plaintiff's motion to remand.

7   **B.    *Motion to Dismiss Pursuant to Rule 12(b)(6)***

8        Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain

9   statement of the claim showing that the pleader is entitled to relief."  A complaint must therefore

10   provide a defendant with "fair notice" of the claims against it and the grounds for relief.  *See Bell*

11   *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation and citation omitted).

12        A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of

13   the pleadings and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to

14   state a claim upon which relief may be granted.  *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.

15   2001).  The court may dismiss a complaint as a matter of law for: (1) "lack of cognizable legal theory,"

16   or (2) "insufficient facts under a cognizable legal claim."  *SmileCare Dental Grp. v. Delta Dental Plan*

17   *of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted).  However, a complaint survives a motion to

18   dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*

19   *v. Twombly*, 550 U.S. 544, 570 (2007).

20        Notwithstanding this deference, the reviewing court need not accept "legal conclusions" as true.

21   *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009).  It is also improper

22   for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated Gen.*

23   *Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  On the other

24   hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then

25   determine whether they plausibly give rise to an entitlement to relief."  *Iqbal*, 129 S.Ct. at 1950.  The

26   court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing

27   all reasonable inferences in favor of the nonmoving party.  *See al-Kidd v. Ashcroft*, 580 F.3d 949, 956

28   (9th Cir. 2009) (citations omitted).

1    Dismissal without leave to amend is appropriate only when the court is satisfied that the

2    deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d

3    750, 758 (9th Cir. 2003); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (holding that dismissal

4    with leave to amend should be granted even if no request to amend has been made). Rule 15(a)(2) of the

5    Federal Rules of Civil Procedure state that leave to amend should be given "when justice so requires."

6    This policy is applied with "extreme liberality." *Morongo band of Mission Indians v. Rose*, 893 F.2d

7    1074, 1079 (9th Cir. 1990).

8    Federal Rule of Civil Procedure 9(b) states that an allegation of "fraud or mistake must state with

9    particularity the circumstances constituting the fraud." The "circumstances" required by Rule 9(b) are

10   the "who, what, when, where, and how" of the fraudulent activity. *Vess v. Ciba-Geigy Corp. USA*, 317

11   F.3d 1097, 1106 (9th Cir. 2003); *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) ("[Rule 9(b)

12   requires] the times, dates, places, benefits received, and other details of the alleged fraudulent activ-

13   ity."). In addition, the allegations "must set forth what is false or misleading about a statement, and why

14   it is false." *Vess*, 317 F.3d at 1106 (quoting *In re GlenFed, Inc. Secs. Litig.*, 542 F.3d 1541, 1548 (9th

15   Cir. 1994)). Rule 9(b)'s heightened pleading standard applies not only to federal claims, but also to

16   state law claims brought in federal court. *Id.* at 1103. This heightened pleading standard ensures that

17   "allegations of fraud are specific enough to give defendants notice of the particular misconduct which is

18   alleged to constitute the fraud charged so that they can defend against the charge and not just deny that

19   they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985); *Concha v.

20   London*, 62 F.3d 1493, 1502 (9th Cir. 1995); *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir.

21   2007) (finding the plaintiff must "inform each defendant separately of the allegations surrounding the

22   alleged participation in the fraud.").

23   Plaintiff's SAC raises four state law claims: (1) violation of the Elder Abuse and Dependent

24   Adult Civil Protection Act; (2) fraud and deceit; (3) breach of fiduciary duties; and (4) and "unlawful,"

25   "unfair," and "deceptive" in violation of California's Business and Professions Code § 17200.[9]

26   Defendant Hagobian moves to dismiss all claims against him for failing to state a claim for which relief

27   can be granted. Defendant further alleges that he has no personal liability because Plaintiff has failed to

28

[9] The SAC is the first time the Plaintiff has alleged a cause of action for breach of fiduciary duty.

11cv00240

make any specific allegations against him aside from the sole allegation that he was the "broker of record" for Seamless;[10]  Plaintiff's prayer for punitive and exemplary damages on the first, second, and third causes of action should be dismissed as Plaintiff has failed to plead these claims with particularity; and Plaintiff should not be granted leave to amend.  Each cause of action will be discussed in turn.

### 1.    Preliminary Considerations - Legal Duty

As a preliminary matter, whether a defendant owes a duty is a question of law.[11]  In order to be legally capable of committing the tort, the defendant must owe a duty to the plaintiff recognized by law and be subject to liability for breach of that duty.  *See Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503 (1994).  A duty in tort owing from a defendant to a plaintiff can be created by law, by a defendant's assumption of that duty, or by a preexisting relationship between the plaintiff and the defendant.[12]  Under California Business and Professions Codes §§ 10159.2 and 10211 a designated broker has a statutory duty to supervise sales agents.  However, courts have not interpreted this duty to create individual liability to third parties for a breach of this duty absent a showing of vicariously liability. *See Nevis v. Wells Fargo Bank,* No. C 07-2568 MHP, 2007 U.S. Dist. LEXIS 65932, 2007 WL 2601213 (N.D. Cal. Sept. 6, 2007).  Under principles of vicarious liability, liability will only be imposed where the principal has the right to direct or control the actions of the agent and the "manifestation of consent by one person to another that the other will act on his behalf."  *Meyer v. Holley*, 537 U.S. 280, 291 (2003) (finding that courts have not imposed liability for failure to supervise in and of itself).  In the instant action, Plaintiff has failed to allege enough facts to support a finding of vicarious liability.  Therefore, upon consideration of the parties arguments and cases cited, the Court finds that Defendant, as a designated broker of Seamless, owes no legal duty to Plaintiff for failure to supervise.  Neverthe-less, the Court discusses each of Plaintiff's contentions below.

---

[10] Defendant in essence is asserting that the claims should be dismissed because Defendant does not owe a legal duty to Plaintiff.

[11] *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 48 Cal.3d 583, 588, 257 Cal. Rptr. 98, 770 P.2d 278 (1989) (discussing whether a defendant owes a duty of care is a question of law).

[12] *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 48 Cal.3d 583, 590, 588, 257 Cal. Rptr. 98, 770 P.2d 278 (1989); *see also Aguirre-Alvarez v. Regents of the Univ. of California*, 67 Cal.App.4th 1058, 1063, 79 Cal.Rptr.2d 580 (1998).

11cv00240

1    **2.    Elder Abuse and Dependent Adult Civil Protection Act - Financial Abuse**

2    Plaintiff's first cause of action alleges that each defendant violated California Welfare and

3    Institutions Code § 15610.30.  Specifically, Plaintiff contends that the defendants "took money or

4    property and/or assisted in taking money and property from Ms. Rose for a wrongful use, when they

5    knew or should have known that their conduct was wrongful."  [SAC Doc. No. 53 ¶ 36.]  To state a

6    claim for elder abuse under California law, a plaintiff must allege that the defendant (1) took, secreted,

7    appropriated, or retained real or personal property of an elder or dependent adult for a wrongful use or

8    with intent to defraud, or both; or (2) assisted in taking, secreting, appropriating, or retaining real or

9    personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both.

10   Cal. Welfare & Inst. Code § 15610.30(a).

11   Here, the only specific allegations with respect to Defendant Hagobian is that Hagobian was the

12   agent or designated broker of Seamless at the time of the Loan transaction, and that he may have

13   delegated the duty to supervise and monitor certain loan counselors to another individual.  However,

14   these allegations fall short of pleading enough facts to show how Defendant Hagobian, at a minimum,

15   "assisted in taking, secreting, appropriating, or retaining" the real or personal property of Plaintiff.

16   Specifically, Plaintiff fails to allege  particular conduct stemming from a particular duty of the

17   Defendant that would satisfy the statute.  *See Nevis v. Wells Fargo Bank,* No. C 07-2568 MHP, 2007

18   U.S. Dist. LEXIS 65932, 2007 WL 2601213, at *4 (N.D. Cal. Sept. 6, 2007) (finding that plaintiff's bare

19   allegations that defendant acted in bad faith and intended to defraud plaintiff by inducing her into

20   unmanageable loan were not specific enough to allege claim of elder abuse); *Delaney v. Baker*, 20 Cal.

21   4th 23, 32 (1999).  Therefore, the facts contained in Plaintiff's SAC, without more, fail to allege a claim

22   for elder abuse against the Defendant.  Accordingly, the Court GRANTS Defendant's motion to dismiss

23   Plaintiff's first cause of action without leave to amend.

24   **3.    Fraud and Deceit**

25   Plaintiff's second cause of action alleges fraud and deceit against all defendants.  Specifically,

26   Plaintiff alleges that "Seamless, through McDevitt, told Ms. Rose that Wachovia mortgage would

27   provide a fifteen year, fixed rate loan, if Ms. Rose paid $27,000.00 up front and that she would be in

28   great shape financially after one year."  [SAC Doc. No. 53 ¶ 39.]  Plaintiff further alleges that all

10

defendants concealed from her that Wachovia had told them in writing that the value of the collateral was not sufficient to support the loan over the term requested, concealed from her that they would receive in excess of $20,000, concealed from her that the loan was a "Pick-a-Pay" loan and not a fixed rate loan, and concealed from her the true facts as represented on the loan paperwork.  Thus, in reliance on representations made by McDevitt, Plaintiff alleges she "provided $27,000 up front, spent her entire savings, incurred credit card debt to make her monthly payments, and ultimately, under duress, sold her home "short" at a loss."  [SAC Doc. No. 53 ¶ 44.]

Defendant Hagobian argues that Plaintiff fails to allege any specific fraudulent conduct on his part, nevertheless reliance on his actions.  [Doc. No. 59 p. 11.]  Defendant further argues that to the extent Plaintiff bases her fraud claims on alleged omissions, these claims fail because concealment may only constitute actionable fraud when the defendant is in a fiduciary relationship with the plaintiff.  *See Magpali v. Framers Group, Inc*., 48 Cal.App.4th 471, 482 (1996).  Thus, Defendant argues that because he was only the "designated broker" for Seamless at the time of the Loan transaction, he never owed an individual duty to Plaintiff.  Accordingly, while Defendant may have had a statutory duty to supervise the agents working for Seamless, their actions are not imputed to him by virtue of being the designated broker.

A court may dismiss a claim grounded in fraud and deceit when its allegations fail to satisfy Rule 9(b)'s heightened pleading requirements.  Moreover, where a complaint is based on a unified fraudulent course of conduct the entire complaint must be plead with particularity.  *See Kearns v. Ford Motor Co*., 567 F.3d 1120, 1126-27 (9th Cir. 2009).  Where the plaintiff alleges a conspiracy with a fraudulent aim, a plaintiff must at the very least plead the basic elements of a civil conspiracy.  *See Wasco Prods., Inc. v. Southwall Tech. Inc*., 435 F.3d 989, 991 (9th Cir. 2006).  When asserting a fraud claim against a corporation or other entity, "the plaintiff's burden . . . is even greater. . . . The plaintiff must allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.'"  *Lazar v. Super. Ct.*, 12 Cal. 4th 631, 645, 49 Cal. Rptr. 2d 377, 909 P.2d 981 (1996) (quoting *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 157, 2 Cal. Rptr. 2d 861 (Ct. App. 1991)).

11cv00240

Here, with respect to Defendant Hagobian, Plaintiff's SAC has failed to meet the heightened pleading standards as required under Rule 9(b).  Specifically, Plaintiff has failed to state whether Hagobian had any knowledge of the facts he allegedly concealed, whether Hagobian had any direct communication with Plaintiff, what particular duty Hagobian owed Plaintiff, and how such duty was breached.  Specifically, because Plaintiff's allegations depend on Defendant's status as the designated broker of Seamless, as discussed above, Plaintiff's claim is barred as a matter of law.  Furthermore, with respect to the alleged conspiracy between and among the defendants to defraud the Plaintiff, Plaintiff has failed to allege what if any agreement existed between the defendants, and what affirmative steps Defendant Hagobian took in furtherance of such conspiracy.  Accordingly, the Court GRANTS Defendant's to dismiss the second cause of action for fraud and deceit without leave to amend.

**4.      Breach of Fiduciary Duty**

Plaintiff's third cause of action alleges that Capital, Seamless, and Defendant Hagobian breached its fiduciary duty to Plaintiff by not providing full and fair disclosure of the terms of the Loan to Plaintiff prior to closing.  Hagobian moves to dismiss the claim on the basis that as a "designated broker," with no independent relationship to Plaintiff, he does not owe a fiduciary duty to the Plaintiff. To sustain a claim for breach of fiduciary duty a "plaintiff must demonstrate the existence of a fiduciary relationship, breach of the fiduciary relationship, and corresponding damages resulting from the breach. *See Shopoff & Cavallo LLP v. Hyon*, 167 Cal. App. 4th 1489 (Ct. App. 2008).

As stated above, Plaintiff's claim for breach of fiduciary duty must fail because Plaintiff has not alleged any facts creating a special circumstance where Hagobian, as the "designated broker" of Seamless, owed a fiduciary duty to Plaintiff, or took actions amounting to vicarious liability.  Plaintiff only alleges that Hagobian owed a fiduciary duty to Seamless to monitor and supervise loan officers Grosser, McDevitt, and others, and breached this duty when he delegated such task to Radtke. However, because Plaintiff has not alleged that Plaintiff and Defendant Hagobian ever communicated, met, or established any type of relationship, Plaintiff's third cause of action fails.  Accordingly, Defendant's motion to dismiss plaintiff's third cause for of action for breach of fiduciary duty is GRANTED without leave to amend.

**5. Unfair Competition - California Business and Professions Code §§ 17200 *et seq.***

Plaintiffs' fourth cause of action alleges unlawful, unfair, and deceptive/fraudulent practices in violation of section 17200.  California Business & Professions Code § 17200, also known as California's "Unfair Competition Law," prohibits "any unlawful, unfair or fraudulent" business practices.  "Since section 17200 is [written] in the disjunctive, it establishes three separate types of unfair competition.  The statute prohibits practices that are either 'unfair'" or 'unlawful,' or 'fraudulent.'"  *Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496 (2003); *see also Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  Plaintiff's SAC alleges Defendant's conduct was unlawful, unfair, and deceptive.

**a.      Plaintiff's Claims under the UCL's "Unlawful" Prong**

Plaintiff alleges Defendant's conduct was unlawful because it violated the Elder Abuse and Dependent Abuse Civil Protection Act, California Business and Professions Code § 10159.2, and the Truth in Lending Act.  Because the Court found Plaintiff has failed to state a claim for relief under the Elder Abuse Act, only Section 10159.2 of the California Business and Professions Code and TILA will be discussed.

First, as stated above, California Business and Professions Code section 10159.2 imposes a duty on designated brokers to supervise the activities and actions taken by officers and employees of the corporation.  However, even if Defendant breached his statutory duty to supervise loan counselors at Seamless, because there is no private right of action for a violation of California Business and Professions Code §10159.2 there can be no liability in the present action.  *See Nevis*, 2009 WL 1458042 at * 9 (N.D. Cal. May 26, 2009).

Finally, with respect to the alleged violation of TILA, Plaintiff fails to allege which specific section or sections were allegedly violated, nevertheless how such sections were violated by the Defendant.  Thus, "without supporting facts demonstrating the illegality of the rule or regulation, an alleged violation of a specific statute is purely conclusory."  *Khoury v. Maly's of Cal. Inc.*, 14 Cal.App. 4th 612, 616 (1993) (finding that plaintiff must set forth, with reasonable particularity, how the statute was allegedly violated); *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F.Supp 1303, 1316 (N.D. Cal. 1997).

### b.    Plaintiff's Claims under the UCL's "Unfair" Prong

Plaintiff alleges that Defendant's conduct constitutes an unfair business practice because it "offends public policy in this State, has no utility or rational justification, and is substantially injurious to consumers." There is disagreement among California courts regarding the definition of "unfair" business practices in consumer cases such as this. As the district court in *Phipps v. Wells Fargo* explained, there is a split of authority that has resulted in three different tests. 2011 WL 302803 at *16 (E.D. Cal. 2011). However, regardless of the test applied, the plaintiff must plead the facts supporting the allegation with sufficient particularity. *Id.*

The test applied in one line of cases requires "that the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions." *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247,256 (2010) (citing *Bardin v. Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255, 1260-1261 (2006)); *Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th at 581, 595-596 (2009); *Gregory v. Albertson's Inc.*, 104 Cal. App. 4th 845, 854 (2002). A second line of cases applies a test to determine whether the alleged business practice "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Drum*, 182 Cal. App. 4th at 257(citing *Bardin*, 136 Cal. App. 4th at 1260; *Davis*, 179 Cal. App. 4th at 594-595). The test applied in a third line of cases draws on the definition of "unfair" in Section 5 of the Federal Trade Commission Act (15 U.S.C. § 5, subd. (n)), and requires that "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Drum*, 182 Cal. App. 4th at 257 (citing *Davis*, 179 Cal. App. 4th at 597-598; *Camacho v. Auto. Club of S. Cal.*, 142 Cal. App. 4th 1394, 1403 (2006)).

Here, no matter what test is applied, Plaintiff's allegations fail to plead enough facts to state a claim with the required level of particularity.

### c.    Plaintiff's Claims under the UCL's "Deceptive/Fraudulent" Prong

Plaintiff alleges that Defendant's conduct was deceptive in that it induced "Plaintiff to fork over $27,000 for a loan she could not afford, to defendant's profit." To state a claim under the UCL based on

1   fraudulent conduct, Plaintiff must allege, with particularity, facts sufficient to establish that the public

2   would likely be deceived by Defendant's conduct.  *See Perez*, 2011 U.S. Dist. LEXIS 96706, 2011 WL

3   2809808, at *16 (Rule 9(b)'s heightened pleading requirement applies).  Bare conclusions that "the

4   average consumer" would likely be deceived are insufficient to state a claim under the "fraud prong" of

5   the UCL.  *See Morgan v. AT&T Wireless Servs., Inc*., 177 Cal. App. 4th 1235, 1255 (2009); *Bardin v.*

6   *Daimler Chrysler Corp.*, 136 Cal. App. 4th 1255, 1275 (2006).  Plaintiff has not met this standard

7   because she has not explained how members of the public are likely to be deceived by the actions, or in

8   this case the inaction Plaintiff accuses Defendant of.

9        Accordingly, the Court GRANTS Defendant's motion to dismiss Plaintiff's fourth cause of

10  action with leave to amend.  However, the Court dismisses Plaintiff's claim under the "unlawful" prong

11  for violation of Section 10159.2 without leave to amend as this claim is barred as a matter of law.  The

12  court is aware that Plaintiff has made specific allegations with respect to other defendants that may meet

13  the specificity requirements as required under rule 9(b) and 12(b)(6).  However, as to Defendant

14  Hagobian, it is clear in view of *Iqbal* and *Twombly* that Plaintiff's allegations lack the necessary facts to

15  reach him individually, in his capacity as a principal, or on any other basis on which the complaint may

16  be sustained.  The Court will give Plaintiff this one last opportunity to amend the fourth cause of action

17  so as to comply with the foregoing order.

18                                              **III.**

19                                        **CONCLUSION**

20        For the reasons stated above, the court DENIES Plaintiff's motion to remand and GRANTS

21  Defendant Hagobian's motion to dismiss with regard to first three causes of action without leave to

22  amend and with leave to amend with respect to the fourth cause of action.

23        //

24        //

25        //

26        //

27        //

28        //

11cv00240

1

2    Plaintiff must file such amended complaint within thirty (30) days of and in accordance with this

3    Order. Plaintiff shall bear in mind that with respect to all defendants, claims one, two and four must also

4    meet the requirements of  Rule 9(b).  Defendant Hagobian shall file his answer within thirty (30) days of

5    the filing of the amended complaint.

6

7

8

9    IT IS SO ORDERED.

10

11    DATED:  September 10, 2012

12                                                        _____

13                                                        Hon. Anthony J. Battaglia
                                                          U.S. District Judge
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11cv00240